United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 18-3071                                          September Term, 2018
                                                     FILED ON: DECEMBER 18, 2018

IN RE GRAND JURY SUBPOENA

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-gj-00041)

Before: TATEL and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

**JUDGMENT**

This cause came to be heard on the record on appeal from the United States District Court for the District of Columbia and the briefs and oral arguments of the parties. Upon consideration thereof, for the reasons set out below and to be explained more fully in an opinion to be filed at a later date, it is

**ORDERED** and **ADJUDGED** that the decision of the district court be affirmed.

The Grand Jury seeks information from a corporation ("the Corporation") owned by Country A. After receiving a subpoena for that information, the Corporation moved to quash claiming (1) that it is immune under the Foreign Sovereign Immunities Act ("the Act") and (2) that the subpoena is unenforceable as unreasonable and oppressive under Federal Rule of Criminal Procedure 17(c)(2) because it would require the Corporation to violate Country A's domestic law. The district court denied the motion. On the sovereign immunity issue, the court assumed that immunity applied, but concluded that it had subject-matter jurisdiction under 18 U.S.C. § 3231 and that the subpoena fell within the Act's exception for commercial activities. The court then rejected the claim that Country A's law barred compliance. When the Corporation failed to produce the requested information, the court held the Corporation in contempt, imposing a fixed monetary penalty to increase each day the Corporation fails to comply. The Corporation appealed. Reviewing the legal questions presented de novo, *In re Sealed Case*, 146 F.3d 881, 883 (D.C. Cir. 1998), we affirm.

Like the district court, we decline to resolve whether foreign sovereigns are entitled to claim the protection of the Act's immunity provision, 28 U.S.C. § 1604, in criminal proceedings. Instead, we assume that immunity extends to the criminal context. And since there is no question that the Corporation falls within the Act's definition of a "foreign state," 28 U.S.C. § 1603(a), (b)(2), we therefore assume that the Corporation is immune unless one of the Act's exceptions

-2-

applies.

Before we can consider those exceptions, however, we must address the Corporation's argument that the district court lacked subject-matter jurisdiction. Once again, we side with the district court: subject-matter jurisdiction lies under 18 U.S.C. § 3231, which gives district courts "original" and "exclusive" "jurisdiction . . . of all offenses against the laws of the United States," without exception. Textually speaking, nothing in the Act purports to strip the district courts of criminal jurisdiction; to the contrary, the Act's only provision related to subject-matter jurisdiction, 28 U.S.C. § 1330(a), *grants* subject-matter jurisdiction over certain "nonjury civil action[s]." The provision includes nothing at all about criminal jurisdiction.

We recognize that the Supreme Court has said—and this court has repeated—that section 1330(a) is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *see also, e.g.*, *Schermerhorn v. State of Israel*, 876 F.3d 351, 353 (D.C. Cir. 2017) (quoting *Amerada Hess*). But the cases where the Court has referred to section 1330(a) as exclusive are all civil actions, and there is no indication that the Court intended to extend this reading to the criminal context. Unlike the other bases for civil jurisdiction at issue in *Amerada Hess*, sections 1330(a) and 3231 "readily could been seen as supplementing one another," 488 U.S. at 438, because criminal jurisdiction can be confined to those cases where the Act's exceptions to immunity apply. Indeed, the contrary reading of the Act, which would completely insulate corporations majority-owned by foreign governments from all criminal liability, seems in far greater tension with Congress's choice to codify a theory of foreign sovereign immunity designed to allow regulation of foreign nations acting as ordinary market participants. *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822 (2018) (noting Congress's desire to hold foreign sovereigns "accountable, in certain circumstances, for their actions"). Accordingly, we believe this is a situation where the Supreme Court's earlier statement, "[t]hough seemingly comprehensive," provides no "clear answer in this case." *Republic of Austria v. Altmann*, 541 U.S. 677, 694 (2004). And seeing no conflict between the two heads of jurisdiction, we find that the Act leaves intact Congress's grant of subject-matter jurisdiction over criminal offenses.

At oral argument, the Corporation offered a new theory: that section 3231 *never* encompassed foreign sovereign defendants, even before the Act. That position is flatly at odds with the provision's text, which covers "*all* offenses against the laws of the United States." 28 U.S.C. § 3231 (emphasis added). And, though historical sources suggest that foreign sovereigns might have been able to raise an immunity defense in a criminal case, there is no indication that any such immunity grew out of a tortured construction of subject-matter jurisdiction under section 3231; rather, the immunity defense was a creature of the common law. *See* Hazel Fox & Philippa Webb, *The Law of State Immunity* 143 (3d ed. 2013).

Turning to the exceptions, we also agree with the district court that, if section 1604's immunity applies, the commercial activity exception is likewise available in criminal proceedings. The Act extends that exception to "any case" meeting its definition—a label noticeably broader than "any civil action." 28 U.S.C. § 1605(a). We also agree that, when

-3-

"necessary to ensure the secrecy of ongoing grand jury proceedings," the government may use *ex parte* submissions to support its claim that an exception applies. *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1075 (D.C. Cir. 1998). Under such unique circumstances, the government bears the burden of establishing a "reasonable probability" that the claimed exception applies, *see In re Sealed Case*, 832 F.2d 1268, 1274 (D.C. Cir. 1987) (internal quotation marks omitted), and we will independently conduct a searching inquiry of the government's legal theory and its supporting evidence. Having performed such an inquiry of the *ex parte* submissions here, we find that the government satisfied its burden of establishing a reasonable probability that this "action is based upon . . . an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere" and that the "act cause[d] a direct effect in the United States." 28 U.S.C. § 1605(a)(2). We therefore agree that the Act does not immunize the Corporation from this subpoena.

We also agree, contrary to the Corporation's argument, that the Act allows for the monetary judgment ordered by the district court. *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, 637 F.3d 373, 376, 379 (D.C. Cir. 2011) (upholding a contempt order including a $5,000 per week fine against the foreign sovereign defendant). Whether and how that sanction can be executed on remand is a separate question for a later day. *See id.* at 377.

Finally, we consider the Corporation's alternative argument that the subpoena is unreasonable and oppressive because it would require the Corporation to violate Country A's law. As the party invoking foreign law, the Corporation "assumes the burden of showing that such law prevents compliance with the court's order." *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987) (per curiam). The Corporation has fallen well short of carrying that burden. The text of the foreign law provision the Corporation relies on does not support its position. Moreover, the submissions from the Corporation's own counsel and—later—a regulator from Country A seeking to explain the Corporation's atextual interpretation lack critical indicia of reliability. *See Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co. Ltd.*, 138 S. Ct. 1865, 1873–74 (2018) (listing, among the factors to be considered when evaluating a foreign government's interpretation of its own laws, "the statement's clarity, thoroughness, and support; its context and purpose; . . . [and] the role and authority of the entity or official offering the statement"). Consequently, we are unconvinced that Country A's law truly prohibits the Corporation from complying with the subpoena.

The Clerk is directed to issue the mandate forthwith.

**<u>Per Curiam</u>**

                              **FOR THE COURT:**
                              Mark J. Langer, Clerk

                        BY: /s/

                              Scott H. Atchue
                              Deputy Clerk