**ARGUED DECEMBER 14, 2018**

**NO. 18-3071**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

IN RE GRAND JURY SUBPOENA

Appeal from the United States District Court for the District of Columbia
No. 1:18-mj-0041

**MOTION TO UNSEAL**

LEE ROSS CRAIN
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York City, York 10166-0193
(212) 351.4000

EMILY RIFF
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, Colorado 80202-2642
(303) 298-5700

THEODORE J. BOUTROUS
  *Counsel of Record*
THEANE EVANGELIS
GIBSON, DUNN &
CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229.7000
tboutrous@gibsondunn.com

BRUCE D. BROWN
KATIE TOWNSEND
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Counsel for Movant Reporters Committee for Freedom of the Press*

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................1

STATEMENT OF FACTS ........................................................................3

    I.    This Action Commences Without Public Access. ...............................3

    II.    This Court Closes Public Access to the Appellate Proceedings. ..........4

    III.    This Court Publishes an a Judgment and Redacted Opinion Revealing Additional Detail About the Case. ......................................5

ARGUMENT ............................................................................................7

    I.    The First Amendment Renders Overbroad this Appeal's Blanket Seal. ....................................................................................................7

        A.    The Public Has a First Amendment Right of Access to Appellate Proceedings. .............................................................8

        B.    The Public Has a Right of Access to Contempt Proceedings...12

        C.    Particularly Where this Court's Opinion was Filed Publicly, Blanket Sealing of these Proceedings Cannot Serve Any Compelling Governmental Interest...........................................18

    II.    Blanket Sealing of the Record, Briefs, and Argument Transcripts in this Contempt Appeal Violates the Common Law Right of Access...................................................................................................20

CONCLUSION .......................................................................................23

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Cryovac Inc.*,
   805 F.2d 1 (1st Cir. 1986)..........................................................................21

*In re Capital Cities/ABC, Inc.'s
   Application for Access to Sealed Transcripts*, 913 F.2d 89 (3d Cir.
   1990) ...............................................................................................................18

*Carducci v. Regan*,
   714 F.2d 171 (D.C. Cir. 1983) .......................................................................10

*Dhiab v. Trump*,
   852 F.3d 1087 (D.C. Cir. 2017) .....................................................................14

*Doe v. Mattis*,
   889 F.3d 745 (D.C. Cir. 2018) ..............................................................10, 20

*Doe v. Pub. Citizen*,
   749 F.3d 246 (4th Cir. 2014) ...........................................................................8

*Douglas Oil Co. v. Petrol Stops Nw.*,
   441 U.S. 211 (1979)..................................................................................15, 16

*Ex parte Drawbaugh*,
   2 App. D.C. 404 (1894) ....................................................................................9

*EEOC v. Nat'l Children's Ctr., Inc.*,
   98 F.3d 1406 (D.C. Cir. 1996)..................................................................22, 23

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596 (1982)...................................................................................7, 18

*In re Grand Jury Matter*,
   906 F.2d 78 (3d Cir. 1990) .............................................................................15

*In re Grand Jury Subpoena, Judith Miller*,
   438 F.3d 1138 (D.C. Cir. 2006)........................................................................8

*In re Grand Jury Subpoena, Judith Miller*,
   493 F.3d 152 (D.C. Cir. 2007) .......................................................................19

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Grosjean v. Am. Press Co.*,
    297 U.S. 233 (1936)....................................................11

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994)...........................................14, 15, 17

*In re Iowa Freedom of Info. Council*,
    724 F.2d 658 (8th Cir. 1983) .............................................15

*In re Knight Publ'g. Co.*,
    743 F.2d 231 (4th Cir. 1984) .............................................20

*In re Krynicki*,
    983 F.2d 74 (7th Cir. 1992) ...........................................9, 10

*Levine v. United States*,
    362 U.S. 610 (1960)..........................................2, 14, 17

*Metlife, Inc. v. Fin. Stability Oversight Council*,
    *865 F.3d 661* (D.C. Cir. 2017)...............................8, 10, 21, 22

*In re Motions of Dow Jones & Co.*,
    142 F.3d 496 (D.C. Cir. 1998)......................................*passim*

*Mueller v. Raemisch*,
    740 F.3d 1128 (7th Cir. 2014) ...........................................11

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012) ..........................................13, 14

*In re N.Y. Times Co.*,
    828 F.2d 110 (2d Cir. 1987) ..............................................8

*N.Y. Times Co. v. United States*,
    403 U.S. 944 (1971)....................................................9

*Newsday LLC v. Cty. of Nassau*,
    730 F.3d 156 (2d Cir. 2013) ..........................................14, 15

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Oliver*,
    333 U.S. 257 (1948)....................................................................14

*Press-Enterprise Co. v. Superior Court*,
    464 U.S. 501 (1984)..........................................................*passim*

*Press-Enterprise Co. v. Superior Court*,
    478 U.S. 1 (1986)..................................................................7, 8

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980)....................................................................12

*S. Union Co. v. United States*,
    567 U.S. 343 (2012)....................................................................17

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997)....................................................................12

*In re Sealed Case*,
    124 F.3d 230 (D.C. Cir. 1997)....................................................................13

*In re Sealed Case*,
    199 F.3d 522 (D.C. Cir. 2000)....................................................................13

*Ex parte Terry*,
    128 U.S. 289 (1888)....................................................................14

*United States v. Hubbard*,
    650 F.2d 293 (D.C. Cir. 1980)..................................................................21, 22

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995)....................................................................11

*United States v. Doe*,
    356 F. App'x 488 (2d Cir. 2009)....................................................................20

*United States v. El-Sayegh*,
    131 F.3d 158 (D.C. Cir. 1997)..................................................................20, 21

## TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Index Newspapers LLC*,
766 F.3d 1072 (9th Cir. 2014) ....................................................................15, 17

*United States v. Moussaoui*,
65 F. App'x 881 (4th Cir. 2003) ...........................................................................9

*Washington Post v. Robinson*,
935 F.2d 282 (D.C. Cir. 1991)...........................................................7, 8, 13, 19

*Wilson v. Am. Motors Corp.*,
759 F.2d 1568 (11th Cir. 1985) ........................................................................11

**Rules**

U.S. Const., amend I ..............................................................................*passim*

**Rules**

Federal Rule of Criminal Procedure 6(e)(5) .........................................................16

## MOTION TO UNSEAL

The Reporters Committee for Freedom of the Press (the "Reporters Committee" or "RCFP") is a nonprofit association dedicated to defending the First Amendment and newsgathering rights of journalists, including by vindicating the public's constitutional and common law rights of access to judicial proceedings and court records.  Pursuant to Circuit Rule 47.1(c), the Reporters Committee respectfully moves the Court to unseal the briefs, the record, and the oral argument transcripts in this appeal.

## INTRODUCTION

This Court's judgment and opinion affirming the contempt order in this appeal were rightly filed publicly.  For the first time in this litigation, the Court permitted the public to understand the nature of these proceedings—including the imposition of apparently hefty monetary fines—the arguments the parties had advanced, a limited and tailored account of the underlying facts, and the outcome.

But public access to the documents supporting a decision—briefs, oral argument transcript, and record—is just as important as public access to the decision itself.  As the Chief Justice has explained, the judiciary is "the most transparent branch in government." Chief Justice John G. Roberts, Remarks at 2018 Federal Judicial Conference of the Fourth Circuit (June 29, 2018).  At

1

present, however, with the exception of the Court's judgment and a redacted version of its opinion, the record in this appeal remains sealed.

The public unquestionably has a right of access to appellate proceedings, which can only be overcome if, and to the extent that, sealing is necessary to serve a compelling governmental interest. One possible justification for sealing portions of the appellate record here may be preservation of grand jury secrecy. That interest is compelling but not alone sufficient to abrogate the public's right of access to all documents, including the oral argument transcript, in this appeal. Even contempt proceedings—including those arising from grand jury investigations—are presumed open to public scrutiny, *Levine v. United States*, 362 U.S. 610, 616 (1960), just like appellate proceedings. The presumption that the public has a right to access and observe appellate litigation in our nation's courts is thus no less robust where the appeal is from a district court order of contempt.

Even though this case was litigated entirely in secret from the beginning until this Court issued its judgment, this Court appropriately recognized that the public's right of access outweighs whatever governmental interest the parties had presented to justify their months-long blanket seal of these proceedings. This Court's public filings make clear that continued blanket sealing of the record simply cannot be justified.

2

The Reporters Committee therefore brings this motion to unseal, because the First Amendment and common law rights of access to this Court's proceedings and records require at least some form of publicly accessible documents in this dispute. RCFP respectfully requests that this Court direct that public, redacted versions of the briefs and record in this appeal and a redacted oral argument transcript be filed.

## STATEMENT OF FACTS

### I.    This Action Commences Without Public Access.

This case commenced in the district court in August 2018.  The case—including its docket—was filed entirely under seal.  No. 1:18-gj-00041 (D.D.C. Aug. 18, 2018).  In September 2018, the district court issued a secret ruling, which was appealed.  No. 18-3068 (D.C. Cir. Sept. 25, 2018).  This Court dismissed that appeal for lack of jurisdiction on October 3, 2018.  *Id.*  One week later, a new appeal (the instant one) ensued from the same district court case.  No. 18-3071 (D.C. Cir. Oct. 10, 2018).

Almost immediately, these proceedings captured the public's and press's attention.  *See* Katelyn Polantz, et al., *Mystery Mueller mayhem at a Washington court*, CNN (Dec. 15, 2018), https://www.cnn.com/2018/12/14/politics/mueller-grand-jury-mysterious-friday/index.html ("Polantz, *Mystery*") (reporting on courthouse activity contemporaneously with district court proceedings); Josh Gerstein & Darren Samuelsohn, *Mueller link seen in mystery grand jury appeal*,

3

Politico (Oct. 24, 2018), https://www.politico.com/story/2018/10/24/mueller-investigation-grand-jury-roger-stone-friend-938572; Michael S. Schmidt, *Mueller Is Fighting a Witness in Court. Who Is It?*, N.Y. Times (Dec. 15, 2018), https://www.nytimes.com/2018/12/15/us/politics/special-counsel-subpoena.html.

## II.  This Court Closes Public Access to the Appellate Proceedings.

"More than a dozen reporters" planned to attend oral argument on December 14, or—because it was sealed—report on the matter from public areas of the courthouse surrounding the courtroom.  Darren Samuelsohn & Josh Gerstein, *Reporters shooed away as mystery Mueller subpoena fight rages on*, Politico, Dec. 14, 2018, https://www.politico.com/story/2018/12/14/mystery-mueller-subpoena-fight-1065409.  But the reporters were "shooed away," and the Court sealed not only the courtroom, but the entire courthouse floor.  *Id.*  Subsequently, "at least 20 journalists" spread out around the courthouse and pooled their resources to communicate about who and what they saw throughout the building.  Zoe Tillman, *There Was Drama At Court Today And Maybe It Involved Mueller's Investigation But Who Knows*, BuzzFeed (Dec. 14, 2018), https://www.buzzfeednews.com/article/zoetillman/robert-mueller-sealed-grand-jury-court-drama.

The removal of the public from the entire floor where the oral argument occurred "surprised many people familiar with the federal building's practices."

4

Samulsohn & Gerstein, *Reporters Shooed Away*.  The decision was called

"unusual," *id.*, and "extreme," Polantz, *Mystery*.

## III. This Court Publishes an a Judgment and Redacted Opinion Revealing Additional Detail About the Case.

Four days after oral argument, this Court issued an unsealed three-page

judgment, providing some factual and legal information about the proceedings.

No. 18-3071 (D.C. Cir. Dec. 18, 2018) ("Op.").  The judgment affirmed the district

court's order holding a foreign-owned company (the "Corporation") in contempt,

with monetary fines increasing each day it refused to comply.  Op. 1.

In the judgment, this Court rejected the Corporation's argument that it was

immune from a grand jury subpoena under the Foreign Sovereign Immunities Act.

The Court reviewed the government's sealed and *ex parte* submissions, concluding

that the subpoena fell within the Act's exception for commercial activities.  Op. 2-

3.  This Court also held that it had subject matter jurisdiction, rejecting the

Corporation's written arguments and "a new theory" introduced at oral argument.

Op. 2.  Finally, this Court concluded it was "unconvinced that Country A's law

truly prohibits the Corporation from complying with the subpoena."  Op. 3.  While

not revealing what laws were at issue, this Court stated "[t]he text of the foreign

law provision the Corporation relies on does not support its position" and the

Corporation's submissions (including from a foreign regulator) "lack[ed] critical

indicia of reliability."  *Id.*

The judgment deepened public interest in this matter, offering "tantalizing clues to a mystery that has riveted Washington journalists and legal insiders." Charlie Savage, *Washington's Mystery Witness Turns Out to Be a Corporation*, N.Y. Times (Dec. 18, 2018), https://www.nytimes.com/2018/12/18/us/politics/mystery-witness-corporation-robert-mueller.html.  But the clues only continued the "guessing game" surrounding the case.  Devlin Barrett, *Prosecutors win court fight over secret subpoena of a foreign company*, Wash. Post (Dec. 18, 2018), https://www.washingtonpost.com/world/national-security/prosecutors-win-court-fight-over-secret-subpoena-of-a-foreign-company/2018/12/18/b56dafac-0315-11e9-b5df-5d3874f1ac36_story.html?utm_term=.098ccd82d846.

On December 22, 2018, the Corporation applied to the Supreme Court for a stay of the contempt ruling and for leave to file its application under seal.  The next day, Chief Justice Roberts temporarily stayed the contempt order, "including the accrual of monetary penalties," pending the filing of a response and further order. *In re Grant Jury Subpoena, Applicant*, No. 18A669 (S. Ct. Dec. 23, 2018).  On December 28, an unidentified party responded to the application, and the applicant replied on January 2, 2019.  All documents remain sealed.

On January 7, 2019, an undisclosed party moved for leave to file a petition for writ of certiorari under seal with redacted copies for the public record.  *In re*

*Grand Jury Subpoena*, No. 18M93 (docketed Jan. 8, 2019). That motion remains

pending and does not appear to be publicly available. On January 8, 2019, the

Supreme Court denied the stay application. That same day, this Court issued a 28-

page, redacted opinion, expanding on its earlier judgment.

## ARGUMENT

## I.    The First Amendment Renders Overbroad this Appeal's Blanket Seal.

The First Amendment creates a presumptive "right of access" to a wide

range of judicial proceedings. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1

(1986) ("*Press-Enterprise II*") (preliminary hearings); *Press-Enterprise Co. v.*

*Superior Court,* 464 U.S. 501 (1984) ("*Press-Enterprise I*") (voir dire); *Globe*

*Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982) (criminal trials). Building

on these seminal cases, this Court declared that "[t]he first amendment guarantees

the press and the public a general right of access to court proceedings and court

documents unless there are compelling reasons demonstrating why it cannot be

observed." *Washington Post v. Robinson,* 935 F.2d 282, 287 (D.C. Cir. 1991).

"[T]wo complementary considerations" govern whether a particular judicial

proceeding is subject to the First Amendment presumption of access. *Press-*

*Enterprise II,* 478 U.S. at 8. The first is "whether the place and process have

historically been open to the press and general public." *Id*. The second is

"whether public access plays a significant positive role in the functioning of the

7

particular process in question." *Id.* Where a qualified right of access exists, "the proceedings cannot be closed unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id*. at 13-14 (citation omitted).

Here, the public has a qualified First Amendment right of access to this appeal. Where a court can file a fully reasoned, redacted opinion, briefs, the record, and the oral argument transcript can be similarly accessible. This Court should direct the public filing of redacted versions of the briefs, the record, and the oral argument transcript in this appeal.

### A.     The Public Has a First Amendment Right of Access to Appellate Proceedings.

The First Amendment "guarantees" a "right of access to...court documents," *Washington Post*, 935 F.2d at 287, and no "court documents" are more central to the appellate process than the oral argument transcript, briefs, and record sought by this motion. *See Doe v. Pub. Citizen*, 749 F.3d 246, 267-68 (4th Cir. 2014) (noting that right applies "to materials submitted in conjunction with judicial proceedings that themselves would trigger the right of access."); *In re N.Y. Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987). Accordingly, the briefs and the record—the source material from which a court draws to perform its Article III duty to decide cases and controversies—are subject to a right of access. *See Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 667-69 (D.C. Cir. 2017) (right of access

8

attached to briefs and joint appendix).  "If the public is to see our reasoning, it should also see what informed that reasoning."  *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006).

Unsurprisingly, public access to appellate documents extends far back in this Court's history.  In *Ex parte Drawbaugh*, for example, this Court rejected an appellant's attempt to seal the records in a patent appeal because an "attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access, and to its records, according to long established usage and practice."  2 App. D.C. 404, 407-08 (1894).

Likewise, "[t]here can be no question that the First Amendment guarantees a right of access by the public to oral arguments in the appellate proceedings of th[e] court" because oral arguments "have historically been open to the public, and the very considerations that counsel in favor of openness of criminal trial support a similar degree of openness in appellate proceedings."  *United States v. Moussaoui*, 65 F. App'x 881, 890 (4th Cir. 2003); *In re Krynicki*, 983 F.2d 74, 76 (7th Cir. 1992) ("Public argument is the norm.").

This principle of openness has not abated even despite the strongest countervailing interests.  *See N.Y. Times Co. v. United States*, 403 U.S. 944 (1971) (denying motion "to conduct part of the oral arguments involving [Pentagon

9

Papers-related] matters in camera"). In a case involving national security interests, for example, this Court held a bifurcated oral argument and published redacted briefs, because of the "presumption of public access to judicial proceedings." *Doe v. Mattis*, 889 F.3d 745, 751 (D.C. Cir. 2018); *id.* at Apr. 5, 2018 Dkt. Entry.

By the logic of *Press-Enterprise*, the public's right of access to briefs, arguments, and records promotes judicial legitimacy and allows the public to learn of and understand significant issues of public concern. Judges "claim legitimacy...by reason." *In re Krynicki*, 983 F.2d at 75. Although they "deliberate in private," they "issue public decisions after public arguments based on public records." *Id.* The public needs the entire triumvirate: "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat." *Id.*

Thus, publishing an opinion, but keeping briefs and record under seal, does not "maintain[] the integrity and legitimacy of an independent Judicial Branch." *Metlife*, 865 F.3d at 663. "Without access to the sealed materials, it is impossible to know which parts of those materials persuaded the court and which failed to do so (and why)." *Id.* at 668. Knowing what materials persuaded the Court is essential: Courts do "not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983). Citizens

who cannot see the underlying briefing or arguments will have more difficulty

trusting the result, thereby undermining judicial legitimacy.

The right of access to appellate proceedings also promotes the public's

understanding of issues of public concern. The First Amendment ensures "an

informed and enlightened public," *Grosjean v. Am. Press Co.*, 297 U.S. 233, 247

(1936), because a "people who mean to be their own Governors, must arm

themselves with the power which knowledge gives," Letter from James Madison to

W. T. Barry, August 4, 1822, 9 Writings of James Madison 103 (Hunt ed. 1910).

When parties litigate to the highest courts in the land on a matter of intense public

interest with only the court's final decision available for the citizenry to see, the

public is denied information it needs "to appreciate fully the [] significant events at

issue in public litigation and the workings of the legal system." *Wilson v. Am.*

*Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985).

Here, this Court's decision is public, but the broader record's blanket

"[s]ecrecy makes it difficult for the public (including the bar) to understand the

grounds and motivations of a decision, why the case was brought (and fought), and

what exactly was at stake in it." *Mueller v. Raemisch*, 740 F.3d 1128, 1135-36

(7th Cir. 2014); *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir.

1995) (observing that public monitoring of the courts "is not possible without

access to…documents that are used in the performance of Article III functions").

11

The decision rejects the Corporation's written and oral arguments, Op. 2-3, its

apparently "[un]reliab[le]" "submissions," Op. 3, and upholds the district court's

sanction, Op. 1.  But by keeping all but the finished products under wraps, the

courts ask the public "to accept what they are prohibited from observing."

*Richmond Newspapers, Inc. v. Virginia*,, 448 U.S. 555, 572 (1980) (opinion of

Burger, C.J.).

### B.     The Public Has a Right of Access to Contempt Proceedings.

That this appeal arises out of contempt proceedings does not eradicate the

First Amendment right.  Grand jury secrecy is, to be sure, a compelling interest.  In

some circumstances, therefore, the presumption of public access yields because

access would "almost invariably reveal matters occurring before the grand jury."

*In re Motions of Dow Jones & Co.*, 142 F.3d 496, 502 (D.C. Cir. 1998).  But the

presumption is maintained when a party seeks, as the Reporters Committee does

here, a more modest goal: to access the briefs, record, and argument transcript

underlying a public judgment and opinion.  *See id.* at 500 (noting Local Rule 302

authorizes access to "pleadings and papers" and comports with public's

"constitutional claim" of access).  Access to these documents does not run similar

risks.  *See, e.g.*, *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), Dkt. Entry Aug.

25, 1997 (unsealing "the briefs filed by the parties" because media company did

not seek "access to the subpoenas themselves" or "any other [documents] which

12

would reveal" grand jury matters); *In re Sealed Case ("Dow Jones II")*, 199 F.3d 522 (D.C. Cir. 2000) (public argument); *In re Sealed Case*, 124 F.3d 230 (D.C. Cir. 1997), *rev'd sub nom. Swidler & Berlin v. United States*, 524 U.S. 399 (1998), Dkt. Entry Jan. 12, 1998 (granting "motion to unseal the transcript of oral argument" that was conducted in camera), Dkt. Entry Apr. 23, 1998 (granting "motion to unseal a portion of the record"). Under the *Press-Enterprise* test, history and logic dictate that a right of public access applies to the contempt proceedings at issue here.

The right of access to contempt proceedings begins with the indisputable right of access to criminal trials. Since the Norman Conquest, public criminal trials have allowed "people not actually attending [to] have confidence that standards of fairness are being observed … and that deviations will become known." *Press-Enterprise I*, 464 U.S. at 508. "Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Id.* (citation omitted).

Following this historic tradition, courts have declared that the public has a qualified First Amendment right of access to numerous types of judicial proceedings. The right applies to nearly all facets of a criminal trial. *See, e.g.*, *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 297-98 (2d Cir. 2012) (collecting cases); *see also Wash. Post*, 935 F.2d 282 (public access to plea

13

agreements).  And "[e]very circuit to consider the issue has concluded that" that same "right of public access applies to civil" proceedings, too.  *Dhiab v. Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring in the judgment) (collecting cases).

Given the opacity of the record to date, it remains unclear what type of penalty—civil or criminal—the district court imposed here.  *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 830-31 (1994) (noting the "elusive distinction between criminal and civil contempt fines"); *compare* Op. 1 (noting penalty that appears to be civil), *with* Op. 2 (discussing the ability of a foreign sovereign "to raise an immunity defense in a criminal case").  If anything, that opacity simply underscores the need for greater access.

In any event, the "First Amendment 'does not distinguish between criminal and civil proceedings.'"  *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013) (quoting *NY Civil Liberties Union*, 684 F.3d at 298) (holding that public right of access applies to civil contempt proceedings).  There is a long history of requiring that contempt proceedings be public to check a court's power, which can be "arbitrary in its nature and liable to abuse."  *Levine*, 362 U.S. at 615 (citing *Ex parte Terry*, 128 U.S. 289, 313 (1888)); *In re Oliver*, 333 U.S. 257, 265-73 (1948).  Because the distinction between civil and criminal contempt is "elusive" and often without a difference, *see Int'l Union*, 512 U.S. at 830-31, numerous courts have

held that the public's right of access applies equally to civil and criminal contempt proceedings. *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1092 (9th Cir. 2014) (unsealing civil contempt docket, while "consider[ing] any redactions the government may request"); *Newsday LLC*, 730 F.3d at 164; *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983); *see also In re Grand Jury Matter*, 906 F.2d 78, 86-87 (3d Cir. 1990) (holding that right attaches where incarceration is a possible penalty); *cf. Dow Jones*, 142 F.3d at 502, 506 (directing district court to consider what redacted documents could be publicly filed in grand-jury subpoena litigation). Contempt proceedings that arise from grand jury investigations are not immune, either, from the public's right of access. *Index Newspapers LLC*, 766 F.3d at 1095-97. Because criminal and "civil contempt proceedings ... carry the threat of coercive sanctions," the right of public access attaches equally to both proceedings. *Newsday LLC*, 730 F.3d at 164.

And logic makes clear why public access to grand jury contempt proceedings in particular causes no injury, as a general matter, to grand jury secrecy. Grand jury secrecy really represents four "distinct interests." *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218-19 (1979). Those four interests are that, in the absence of secrecy, (1) witnesses might not come forward, "knowing that those against whom they testify would be aware" of their testimony; (2) because of this same fear of retribution, witnesses who do appear "would be less

15

likely to testify fully and frankly"; (3) individuals about to be indicted "would flee or would try to influence individual grand jurors to vote against indictment"; and (4) persons accused, but ultimately "exonerated by the grand jury," might be "held up to public ridicule." *Id* at 219.

If anything, recognition of the public's right of access to contempt proceedings *serves* these interests.  Allowing tailored public access will *encourage* a reticent witness to comply with a grand jury investigation by making clear the potential penalties for failing to do so.  Such a witness would even be less likely to flee, because the penalty for flight is being held in contempt.  Moreover, the witness's identity could be preserved through redaction if necessary, *see infra* Pt. I.C.  Likewise, any risk that a vindicated accused could be "ridicule[d]" can be mitigated through appropriate, limited redactions, *see infra* at Pt. I.C.

The Federal Rules of Criminal Procedure underscore that the source of this appeal—a grand-jury contempt order—does not minimize the public's right of access to it.  In fact, Rule 6(e)(5) acknowledges that sealing contempt proceedings is "subject to any right to an open hearing," and that district courts "must close any hearing" only "to the extent necessary to prevent disclosure of the matter occurring before the grand jury."  Rule 6(e)(5) thus codifies the public right of access to contempt proceedings, recognizing that such a right can be rebutted as "necessitated" to justify the compelling interest of preserving grand jury secrecy.

16

*See Press-Enterprise I*, 464 U.S. at 510.  Blanket sealing of all proceedings—hardly the least-restrictive means available, see *infra* Pt. I.C—cannot possibly be "necessitated," here, particularly after release of this Court's judgment and more fulsome, redacted opinion.

"Public access" to contempt proceedings "provides a check on the process by ensuring that the public may discover when a witness has been held in contempt and held in custody." *Index Newspapers*, 766 F.3d at 1093; *see Levine*, 362 U.S. at 615-16.[1]  And contempt proceedings may well be attenuated from the actual content of a grand jury investigation, meaning that "[l]ogic favors greater public access to these transcripts and filings because they are less likely to disclose sensitive matters relating to the grand jury's investigation." *Index Newspapers*, 766 F.3d at 1094-95 (discussing filings regarding continued confinement proceedings).  At bottom, there can be no question that the public has a right of access to contempt proceedings.  There can thus be no doubt that the public has a

---

[1]  It is of no moment that the Corporation was not incarcerated.  Any argument that a qualified right of access can never apply to monetary penalties would require the conclusion that the public *never* has a right of access to any corporate contempt proceeding because corporations cannot be jailed.  Likewise, monetary penalties can have serious implications and unquestionably cannot be imposed without constitutional safeguards.  *See Int'l Union*, 512 U.S. at 831-32; *cf. S. Union Co. v. United States*, 567 U.S. 343, 360 (2012) (holding that *Apprendi* applies to criminal fines).

17

right of access to the briefs submitted in this appeal and to the oral argument

transcript.

### C.     Particularly Where this Court's Opinion was Filed Publicly, Blanket Sealing of these Proceedings Cannot Serve Any Compelling Governmental Interest.

The public's First Amendment right of access to contempt proceedings does

not mandate disclosure of the entire record in and of itself—nor does RCFP request

such relief.  The "presumption of openness," *Press-Enterprise I*, 464 U.S. at 510, is

just that—a presumption.  But where the government "'attempts to deny the right

of access in order to inhibit the disclosure of sensitive information, it must be

shown that the denial is necessitated by a compelling governmental interest, and is

narrowly tailored to serve that interest.'"  *Id.* (quoting *Globe Newspaper Co.*, 457

U.S. at 606-07).  "The interest is to be articulated along with findings specific

enough that a reviewing court can determine whether the closure order was

properly entered."  *Id.*

At this stage in this appeal, there have been no public findings made to

articulate why the briefs, record, and oral argument transcript must be withheld

wholesale, so the Reporters Committee's ability to challenge the blanket sealing of

the proceeding—or any portion thereof, for that matter—is limited.  *See In re

Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d

89, 95 (3d Cir. 1990) (noting that party moving to unseal "was at a severe

18

disadvantage" because the movant "had absolutely no information concerning [the documents'] particular subject matter" or the "government interests"). Nonetheless, there is no compelling interest to withhold the parties' briefs and oral argument transcripts *in toto*. Indeed, that this Court could file a judgment and redacted version of its opinion publicly, outlining the parties' legal arguments and at least part of the underlying factual circumstances of the appeal, demonstrates that at least some portions of the proceedings may be open to public view without jeopardizing any compelling governmental interest in grand jury secrecy, or otherwise.

Because at least some portions of this record can "only...confirm to the public what [is] already validated by [] official source[s]," keeping such information under seal can hardly be justified by any "compelling interest" and thus must be disclosed. *Wash. Post*, 935 F.2d at 292; *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154-55 (D.C. Cir. 2007) (ordering the "release" of "those redacted portions of [the] concurring opinion and the two ex parte affidavits that discuss grand jury matters" where "the 'cat is out of the bag'" given that one grand jury witness "discusse[d] his role on the CBS Evening News"); *Dow Jones*, 142 F.3d at 505 (noting that when grand jury witness's attorney "virtually proclaimed from the rooftops that his client had been subpoenaed," that fact was no longer protected by grand jury secrecy).

19

Redacting portions of documents is a more narrowly tailored (and thus less-restrictive) alternative to withholding them wholesale. *See United States v. Doe*, 356 F. App'x 488, 490 (2d Cir. 2009) (Where "a party seeks to seal the record of criminal proceedings *totally* and *permanently*, the burden is heavy indeed."); *In re Knight Publ'g. Co.*, 743 F.2d 231, 234 (4th Cir. 1984) (*citing Press-Enterprise*). In *Dow Jones*, for instance, this Court remanded so that the trial court could consider whether redactions, rather than sealing whole documents, would be possible. 142 F.3d at 502, 506. This Court should do the same for these appellate proceedings, particularly since the Court is well positioned to avoid inadvertent disclosure of secret grand jury information: Because arguments are over, the Court can carefully choose what may be redacted from the oral argument transcript and briefs without any risk of disclosure, while appropriately respecting the public's right of access to these appellate proceedings. *See Doe*, 889 F.3d. at 751.

## II.    Blanket Sealing of the Record, Briefs, and Argument Transcripts in this Contempt Appeal Violates the Common Law Right of Access.

"The common law right of access to judicial records antedates the Constitution," *United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997), and serves as a second source of a right to unseal the oral argument, briefing, and record in the case. That right attaches to the judicial records sought by this motion. The oral argument transcript, briefing, and record are all "materials on which [the] court relie[d] in determining the litigants' substantive rights." *El-Sayegh*, 131 F.3d

20

at 162 (quoting *Anderson v. Cryovac Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)).  As this Court explained, the "reason parties file briefs" is to "affect the court's decision," so the common law right attaches to them.  *Metlife*, 865 F.3d at 667.  The same must be true of oral argument transcripts: there "is no doubt" that oral argument, a verbal extension of the briefs, "play[s] a central role in the adjudicatory process." *Id*.  Finally, just as courts rely on briefs, judicial review "requires the court to consider the record" to make a decision.  *Id*.  The briefs, the record, and the oral argument transcript are all subject to the common law right of access.

This Court applies a six-part test to determine whether the "strong presumption in favor of public access ... may be outweighed in certain cases by competing interest."  *Metlife*, 865 F.3d at 665.  When a court considers "a motion to seal or unseal, it should weigh: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."  *Id*. (internal quotation marks omitted); *see also United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980).

21

The first two factors unquestionably favor disclosure.[2]  Most importantly, the public needs access to the documents.  As described above, oral argument, record evidence, and briefs are at the core of the judicial "adversarial system." And when the court issues a "public opinion," as the Court did here, the public is entitled to "access" to the judicial records that the court considered and relied on to reach its decision.  *Metlife*, 865 F.3d at 668.  The lack of previous public access to the documents sought by this motion only highlights the problem: the public cannot gauge for itself the soundness of the ongoing proceedings. Moreover, this Court's judgment and opinion explicitly referred to counsel's arguments, including those at oral argument, and "there is a 'need for public access' in those instances where 'the documents at issue are specifically referred to in the [court's] public decision.'"  *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (cleaned up) (quoting *Hubbard*, 650 F.2d at 318).  Finally, the documents were introduced during the judicial proceedings for the purpose of persuading judges, which lies at the core of the common law right of access.  *See Metlife*, 865 F.3d at 668-69.  "Given" that the factors on balance favor unsealing "and the strong presumption in favor of public access," it is "error" to completely seal all

---

[2]  Given the dearth of public facts or explanations for why materials have been sealed, RCFP cannot presently address the third through fifth factors but, in any event, any such objections or interests will be minimally affected, and redactions can mitigate any prejudice.

but two documents—the judgment and opinion—in this litigation. *Nat'l Children's Ctr.*, 98 F.3d at 1410.

## CONCLUSION

For the foregoing reasons, this motion to unseal the briefs, record, and oral argument transcript should be granted.

January 9, 2019                              Respectfully submitted,

                                              /s/ Theodore J. Boutrous
   LEE ROSS CRAIN                             THEODORE J. BOUTROUS
   GIBSON, DUNN & CRUTCHER LLP                   *Counsel of Record*
   200 Park Avenue                            GIBSON, DUNN & CRUTCHER
   New York City, York 10166-0193             LLP
   (212) 351.4000                             333 South Grand Avenue
                                              Los Angeles, California 90071-3197
   EMILY RIFF                                 (213) 229.7000
   GIBSON, DUNN & CRUTCHER LLP                tboutrous@gibsondunn.com
   1801 California Street, Suite 4200
   Denver, Colorado 80202-2642                BRUCE D. BROWN
   (303) 298-5700                             KATIE TOWNSEND
                                              REPORTERS COMMITTEE FOR
                                              FREEDOM OF THE PRESS
                                              1156 15th St. NW, Suite 1020
                                              Washington, DC 20005
                                              Phone: 202.795.9300
                                              Facsimile: 202.795.9310

*Counsel for Movant Reporters Committee for Freedom of the Press*

23

## CERTIFICATE OF COMPLIANCE

1.      This Motion to Unseal complies with the type-volume limitation of

Federal Rules of Appellate Procedure 27(d) because it contains 5187 words,

excluding the parts of the motion exempted by Federal Rule of Appellate

Procedure 32(f); and

2.      This Motion to Unseal complies with the typeface requirements of

Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of

Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a

proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New

Roman font.


January 9, 2019                              _/s/ Theodore J. Boutrous_____
                                            THEODORE J. BOUTROUS
                                                *Counsel of Record*
                                            GIBSON, DUNN & CRUTCHER
                                            LLP
                                            333 South Grand Avenue
                                            Los Angeles, California 90071-3197
                                            (213) 229.7000
                                            tboutrous@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 2019, I caused the foregoing Motion to Unseal to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the Court's CM/ECF system. I further certify that four copies of this motion were filed with the clerk, pursuant to Circuit Rule 27(b), by hand delivery to the clerk, pursuant to Circuit Rule 25(d). Because the parties and their counsel are not currently public, we are unable to effect service of the Motion to Unseal on the parties.

January 9, 2019
/s/ Theodore J. Boutrous
THEODORE J. BOUTROUS
*Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229.7000
tboutrous@gibsondunn.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1,

the Reporters Committee for Freedom of the Press certifies that it is an

unincorporated association of reporters and editors with no parent corporation and

no stock.

January 9, 2019

 /s/ Theodore J. Boutrous
THEODORE J. BOUTROUS
*Counsel of Record*
GIBSON, DUNN & CRUTCHER
LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229.7000
tboutrous@gibsondunn.com

3

# CERTIFICATE OF PARTIES

Because the identity of the parties is not public, the Reporters Committee for

Freedom of the Press is not able to provide a certificate of parties, intervenors, and

amici who have appeared before the district court and are in this court, pursuant to

Circuit Rules 27(a)(4) and 28(a)(1)(A).


Date January 9, 2019                           _/s/ Theodore J. Boutrous_____
                                               THEODORE J. BOUTROUS
                                                  *Counsel of Record*
                                               GIBSON, DUNN & CRUTCHER
                                               LLP
                                               333 South Grand Avenue
                                               Los Angeles, California 90071-3197
                                               (213) 229.7000
                                               tboutrous@gibsondunn.com